UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GLORIA ANDERSON                                    CIVIL ACTION
o/b/o K.C.

VERSUS                                             NUMBER: 14-1831

CAROLYN W. COLVIN,                                 SECTION: "C"(5)
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits.  (Rec. docs. 15, 16, 19).

On January 20, 2012, Gloria Anderson, mother of the Plaintiff-in-interest herein, K.C., filed an application for SSI benefits on behalf of the minor child, alleging disability as of September 28, 2004.[1/]  (Tr. pp. 139-144).  In a "Disability Report-Child" form that appears in the record below, Plaintiff's disabling conditions were identified as asthma and ADHD. (Tr. p. 164).  Plaintiff's application for SSI benefits was denied at the initial level of the Commissioner's administrative review process on April 25, 2012.  (Tr. pp. 95-102). Pursuant to Plaintiff's request, a hearing *de novo* before an Administrative Law Judge ("ALJ") went forward on January 30, 2013 at which Plaintiff and Ms. Anderson appeared and Ms. Anderson testified.  (Tr. pp. 107-109, 43-93).  On April 24, 2013, the ALJ issued a written decision in which she concluded that Plaintiff was not disabled within the meaning

---

[1/] A review of the administrative record reveals that a previous application for Social Security benefits had been filed on behalf of K.C. and was denied at the initial level of the Commissioner's administrative review process on July 8, 2005.  (Tr. pp. 160-161).

of the Social Security Act.  (Tr. pp. 21-42).  The Appeals Council ("AC") subsequently denied

Plaintiff's request for review of the ALJ's decision on June 20, 2014, thus making the ALJ'S

decision the final decision of the Commissioner.  (Tr. pp. 1-6).  It is from that unfavorable

decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and

1383(c)(3).

In her cross-motion for summary judgment, Plaintiff frames the issues for judicial

review as follows:

> 1) Contrary to §416.926a(e)(2)(iii), the ALJ failed to find a marked limitation in Acquiring and Using Information despite valid test scores two or more standard deviations below the mean.
>
> 2) The ALJ failed to rate KC's limitations in every domain.
>
> 3) The ALJ failed to consider the extensive supports that KC requires.
>
> 4) The finding of less than marked limitation in Interacting and Relating with Others is contrary to law and unsupported by substantial evidence.

(Rec. doc. 15-2, p. 1).

Relevant to the resolution of the foregoing issues are the following findings that

were made by the ALJ:

> 1. The claimant was born on August 28, 2004.  Therefore, she was a school-age child (20 CFR 416.92a(g)(2)).
>
> 2. The claimant has not engaged in substantial gainful activity since January 20, 2012, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: asthma, attention deficit hyperactivity disorder (ADHD), oppositional defiant disorder (ODD), and obesity (20 CFR 416.924(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5.  The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6.  The claimant has not been disabled, as defined in the Social Security Act, since January 20, 2012, the date the application was filed (20 CFR 416.924(a)).

(Tr. pp. 27, 28, 36).

Judicial review of the Commissioner's decision to deny SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries:  (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with  relevant legal standards.  *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987).   If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no  substantial evidence is appropriate only if no credible evidentiary  choices  or medical findings exist to support the Commissioner's decision.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial  evidence  is  more  than  a  scintilla,  less  than  a preponderance, and is such relevant evidence as a reasonable mind might  accept as  adequate  to  support  a  conclusion.  *Jones  v. Heckler*, 702  F.2d 616, 620 (5th Cir. 1983).  The Court may not reweigh the  evidence  or  try  the  issues *de novo*, nor may  it substitute its judgment for that of the Commissioner.  *Cook v. Heckler*, 750 F.2d 590, 592 (5th Cir. 1983).  Conflicts in the evidence are for the Commissioner to

resolve, not the courts. *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant, whether a child or an adult, bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Fraga*, 810 F.2d at 1301; 20 C.F.R. §416.912(a). In making a disability determination on a child, the Commissioner uses the three-step sequential analysis set forth in 20 C.F.R. §416.924, as follows:

> 1.    determine whether the child engaged in substantial gainful activity during the relevant time frame and, if not;
>
> 2.    determine whether the child has a medically determinable severe impairment and, if so;
>
> 3.    determine whether the impairment meets, medically equals, or is functionally equal to an impairment set forth in the Listing of Impairments, Appendix 1, Subpart P, Part 404.
>
> *See Verrett v. Commissioner of Social Security*, No. 99-CV-3647 2001 WL 179922 at *1 n. 7 (E.D. La. Feb. 20, 2001)

In determining whether a child's impairment is functionally equivalent to one of those set forth in the Listing of Impairments, the Commissioner considers the child's limitations in the following six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. 20 C.F.R. §416.926a(b)(1). To be functionally equal to a listing and thus of listing-level severity, the child must have "marked" limitations in two of the six domains or an "extreme" limitation in one domain. 20 C.F.R. §416.926a(a). In evaluating a child's ability to function in each domain, the Commissioner is to consider: 1) the activities the child is able to perform; 2) the activities the child is not able to perform; 3) which of the child's activities are limited or restricted

4

compared to children of the same age who do not have impairments; 4) whether the child has difficulty with activities at home, in childcare, at school, or in the community; 5) whether the child has difficulty independently initiating, sustaining, or completing activities; and, 6) what kind of help the child needs to do activities, how much, and how often.  20 C.F.R. §416.926a(b)(2); *Maps ex rel. M.J. v. Astrue*, 09-CV-2226, 2010 WL 1946662 at *8 (N.D. Tex Apr. 30, 2010), *adopted*, 2010 WL 1948363 (N.D. Tex. May 13, 2010).

Plaintiff challenges the Commissioner's decision to deny her SSI benefits on four separate grounds, the first one being that contrary to the provisions of 20 C.F.R. §416.926a(e)(2)(iii), the ALJ erred in failing to find that she had a marked limitation in the domain of acquiring and using information despite valid test scores that were two or more standard deviations below the mean.  This challenge, if decided in Plaintiff's favor, is case-dispositive:  because the ALJ found that Plaintiff had a marked impairment in the domain of attending and completing tasks, a similar finding in the domain of acquiring and using information would equate with a finding of disability under §416.926a(a).  For the reasons that follow, as the Court believes that Plaintiff's first challenge to the Commissioner's decision has merit, a discussion of the remaining challenges will be pretermitted here.

As noted earlier, functional equivalence is determined by assessing the degree of a child's limitations in six domains, with listing-level severity being established if the child has "marked" limitations in two of the six domains or if the child has an "extreme" limitation in one domain.  20 C.F.R. §416.926a(a).  In determining whether a child has a "marked" or "extreme" limitation, the Commissioner considers the functional limitations resulting from all of the child's impairments, "including their interactive and cumulative effects."  20 C.F.R. §416.926a(e)(1).  Among the medical evidence that the Commissioner

5

may consider in making that determination are the results of ". . . formal testing that provides information about your development or functioning in terms of percentiles, percentages of delay, or age or grade equivalents." 20 C.F.R. §416.926a(e)(1)(ii). A marked limitation exists when an impairment or combination of impairments interferes seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. §416.926a(e)(2)(i). A marked limitation is one that is more than moderate but less than extreme, the equivalent of functioning that would be expected to be found ". . . on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* Of particular relevance to the matter at hand, the Regulations further provide that:

> (iii) If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score. (*See* paragraph (e)(4) of this section.)

20 C.F.R. §426.926a(e)(2)(iii).

Also informative to the matter at hand is language that appears within Social Security Ruling ("SSR") 09-4p, the SSR pertaining to functional equivalence in the domain of attending and completing tasks, which instructs that "[c]hildren with attention-deficit/hyperactivity disorder (AD/HD) whose primary difficulty is inattention may be easily distracted or have difficulty focusing on what is important and staying on task." *Id*. In addition, "[c]hildren with AD/HD whose primary difficulty is hyperactivity and impulsivity may fidget with objects instead of paying attention, talk instead of listening to instructions, or get up from their desks and wander around the classroom beyond what is

expected of children their age who do not have impairments." *Id.* at *3 (footnote omitted).

Additional language in SSR 09-4p discusses the effect that deficits in the domain of

attending and completing tasks may have on limitations in other domains:

> . . . school-age children with AD/HD may have limitations in
> multiple domains.  The effects of inattention and hyperactivity
> can impede the learning process and affect competence in
> many areas of life.  These effects can result in limitations in the
> domain of "Acquiring and using information;" for example, by
> undermining academic performance.
>
> SSR 09-4p, 2009 WL 396033 at *3-4.

This interplay is echoed in SSR 09-3p, the SSR pertaining to functional equivalence

in the domain of acquiring and using information, which provides as follows:

> [c]hildren who have limitations in the domain of "acquiring
> and using information" may also have limitations in other
> domains.  For example, mental impairments that affect a child's
> ability to learn may also affect a child's ability to attend or to
> complete tasks.  In such cases, we evaluate limitations in both
> domains of "Acquiring and using information" and "Attending
> and completing tasks."

As both SSR 09-4p and SSR 09-3p make clear:

> [r]ating the limitations caused by a child's impairment(s) in
> each and every domain that is affected is not 'double-weighing'
> of either the impairment(s) or its effects.  Rather, it recognizes
> the particular effects of the child's impairment(s) in all
> domains involved in the child's limited activities.
>
> SSR 09-4p, 2009 WL 396033 at
> *4; SSR 09-3p, 2009 WL 396025
> at *4 (footnotes omitted).

In conducting her functional equivalence analysis in the present case, the ALJ found

that Plaintiff had a marked impairment in the domain of attending and completing tasks

based upon the following evidence:

7

> The claimant has [a] marked limitation in attending and
> completing tasks. The teacher questionnaires completed by
> Ms. Inzinna identify obvious and serious problems in attending
> and completing tasks. (Exhibits 4E, 34E). In addition, the
> previously discussed evaluation conducted by Pupil Appraisal
> Services indicated that the claimant had difficulty staying on
> task, completing assignments, and maintaining attention.
> (Exhibit 21F). Based on the foregoing information, the
> undersigned finds that the claimant has [a] marked limitation
> in attending and completing tasks.

(Tr. p. 33).

However, in the domain of acquiring and using information, the ALJ found that

Plaintiff had a less than marked limitation, explaining as follows:

> The claimant has [a] less than marked limitation in acquiring
> and using information. Although the teacher questionnaires
> identifies difficulties (sic) in the claimant's ability to read and
> comprehend material, express ideas in written form, and learn
> new material, the comprehensive evaluation conducted by
> Pupil Appraisal Services indicates that the claimant's primary
> difficulties stem from distraction, off task behaviors, and
> attempts to escape work that she finds too difficult. (Exhibit
> 21F). In the absence of more substantial evidence of limitation
> in acquiring and using information, the undersigned finds that
> the claimant has [a] less than marked limitation in this domain.

(Tr. p. 32).

Turning to the documentary evidence that was cited by the ALJ above, the

questionnaires from Plaintiff's teacher, Ms. Inzinna, total two in number and were

completed approximately eight months apart. At the time that the first questionnaire was

completed on February 28, 2012, Plaintiff was in the first grade at Hammond Westside

Montessori, having been held back from advancement to the second grade the previous

year. (Tr. pp. 171, 493). Despite having been held back, Plaintiff was performing below the

first-grade level in reading, math, and written language. (Tr. p. 171). Both "obvious" and

"serious" problems in the 10 enumerated activities in the domain of acquiring and using

8

information were noted by Ms. Inzinna.  (Tr. p. 172).  By the time that the second questionnaire was completed on October 16, 2012, Plaintiff had been "promoted with intervention" to the second grade but was performing at the kindergarten level in reading and written language and at the first grade level in math.  (Tr. pp. 493, 288).  In the domain of acquiring and using information, Ms. Inzinna reported that Plaintiff's ability had actually regressed such that she was said to have a "very serious" problem in five of the 10 enumerated activities and a "serious" problem in three others.  (Tr. p. 289).

The final piece of documentary evidence that was relied upon by the ALJ was the report of a comprehensive evaluation that was performed by the Pupil Appraisal Services ("PAS") of the Tangipahoa Parish School System.  (Tr. pp. 490-515).  The overriding purpose of that evaluation was to determine Plaintiff's eligibility to receive special education services and ". . . to develop a specially designed individualized education program which addresses the student's needs . . ."  (Tr. pp. 512-513).  The PAS evaluation process appears to have been conducted over the course of several months and involved the input of two social workers, a certified school psychologist, an educational diagnostician, an occupational therapist, a school nurse, and Ms. Inzinna as well as participation by Plaintiff and her mother.  (Tr. p. 491).  Included in the battery of tests that the evaluation entailed was the Reynolds Intellectual Assessment Scales ("RIAS"), "an individually administered test of intelligence with a supplemental measure of memory appropriate for ages 3 years through 94 years."  (Tr. p. 505).  In that testing, Plaintiff achieved moderately below average scores in the verbal intelligence index, the nonverbal intelligence index, and the composite intelligence index.  (Tr. p. 506).  It was those test scores that the ALJ discussed in the body of her written decision and upon which she relied

in finding that Plaintiff had a marked impairment in the domain of attending and completing tasks while at the same time concluding that Plaintiff had a less than marked impairment in the domain of acquiring and using information.  (Tr. pp. 30, 31-33).

However, what the ALJ failed to discuss or even mention were the results of another test that was administered as part of the PAS evaluation, the Woodstock Johnson III Tests of Achievement ("WJ III"), ". . . a wide range, comprehensive set of individually administered tests for measuring academic achievements" in ". . . reading, mathematics, written language, oral language, and academic knowledge."  (Tr. pp. 502-504).  In the WJ III, standard scores are based on an average or "mean" of 100 with a standard deviation of 15, meaning that each 15 points below 100 is one standard deviation below the mean; *e.g.*, a score of 85 is one standard deviation below the mean and a score of 70 is two standard deviations below the mean.  *See, e.g., Boyington v. Colvin*, 48 F.Supp.2d 527, 531 (W.D. N.Y. 2014)(same scoring scale in Batelle Developmental Inventory II ("BDI-2")); Paige Pullen, Ph.D., *Scoring and Interpretation of the Woodcock Johnson III* (2010).[2/]  A standard score below 70 is thus considered to be "very low," the lowest of the scoring ranges that are available in the WJ III.  *See Green v. Astrue*, No. 09-CV-1028, 2011 WL 1440363 (M.D. La. Feb. 15, 2011), *adopted*, 2011 WL 1456218 (M.D. La. Apr. 14, 2011).

Upon WJ III testing, Plaintiff achieved the following test scores of 70 or less, scores that were two or more standard deviations below the mean:  Reading Fluency – 64; Passage Comprehension – 56; Broad Reading Skills – 57; Calculations – 58; Math Calculation Skills – 60; Broad Math Skills – 67; Writing Fluency – 68; Writing Samples – 62; and Written Expression – 61.  (Tr. p. 502).  Those "[t]est results appear[ed] to be a valid

---

[2/]  Found at http:faculty.virginia.edu/PullenLab/WJIIIDRBModule/.

assessment of her current academic functioning level." (Tr. p. 501). In addition to shortcomings in performing mathematical computations, some of the lowest scores that Plaintiff obtained were evidence of deficiencies in communication skills that are vital in the domain of acquiring and using information. *See Noel v. Colvin*, No. 12-CV-2064, 2013 WL 6797697 at *3 (C.D. Calif. Dec. 20, 2013).

In finding that Plaintiff had a less than marked limitation in the domain of acquiring and using information, the ALJ acknowledged the written communication difficulties that had been reported by Ms. Inzinna in the Teacher Questionnaires but essentially discounted those based on the PAS evaluation report which ". . . indicates that the claimant's primary difficulties stem from distraction, off task behavior, and attempts to escape work that she finds too difficult." (Tr. p. 32). Yet in concluding that Plaintiff did have a marked limitation in attending and completing tasks, the ALJ cited the "obvious and serious problems" that were documented by Ms. Inzinna in addition to the PAS report results which ". . . indicated that the claimant had difficulty staying on task, completing assignments, and maintaining attention." (Tr. p. 33). In doing so, the ALJ appears to have lost sight of the fact that the influence of impairments in one domain may adversely affect a child's functioning in another. *Dodson o/b/o S.L.S. v. Comm. of Soc. Sec.*, No. 11-CV-0332, 2012 WL 1831844 at *5 (S.D. Ohio May 18, 2012), *adopted*, 2012 WL 2160340 (S.D. Ohio June 13, 2012).

The plain fact of the matter is that on standardized testing designed to measure the level of her academic achievement, Plaintiff achieved numerous scores that were at least two standard deviations below the mean. The record further establishes that Plaintiff's day-to-day functioning is consistent with those scores. Plaintiff was "administratively placed" in kindergarten, was held back once in the first grade, was only promoted to the

second grade with interventions.  Ms. Inzinna, who was best situated to opine on Plaintiff's capabilities in the particular domain, *Boyington*, 48. F.Supp.2d at 530, reported that Plaintiff's functionality in acquiring and using information had actually declined from the spring 2011-2012 school session to the fall 2012-2013 school session, such that she had very serious problems in five of the 10 domain-related activities and a serious problem in three others.  The Court also notes that this decline occurred despite accommodations having been made for Plaintiff and that she was found to be in need of continued special education services following the PAS evaluation.  The need for such accommodations is strongly suggestive that Plaintiff has a marked impairment in the domain of acquiring and using information.  *Hurston o/b/o I.B. v. Comm. of Soc. Sec.*, No. 12-CV-12288, 2013 WL 3835126 at *9 (E.D. Mich. July 24, 2013).  In other testing that was administered as part of the PAS evaluation process, the Conners 3rd Edition test, in which scores of greater than 60 ". . . are significantly elevated and indicate clinical significance," Plaintiff obtained the following scores:  Inattention Oppositional – 72; Hyperactivity/Impulsivity – 90; Learning Problems/Executive Functioning – 79; Defiance Aggression – 90; and, Peer Relations – 89. (Tr. pp. 506-507).

Functional equivalence is established if a child has marked limitations in two of the six domains enumerated in §416.926s(b)(1).  The ALJ in the present case having found that Plaintiff has a marked limitation in the domain of attending and completing tasks, a similar finding in the domain of acquiring and using information would establish functional equivalence.  Because the evidence summarized above establishes that Plaintiff does indeed suffer from a marked limitation in acquiring and using information, one that is more than moderate, it will be recommended that Defendant's motion for summary judgment be

denied, that Plaintiff's motion for summary judgment be granted, and that Plaintiff's case be remanded to the Commissioner for an award of benefits. *Boyington*, 48 F.Supp.2d at 531-32; *F.M. o/b/o B.M. v. Astrue*, No. 08-CV-4430, 2009 WL 2242134 at *11-12 (E.D. N.Y. July 27, 2009).

## RECOMMENDATION

For the foregoing reasons, it is recommended that Defendant's motion for summary judgment be denied, that Plaintiff's motion for summary judgment be granted, and that Plaintiff's case be remanded o the Commissioner for an award of benefits.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this ___31st___ day of _____July_____, 2015.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE